Gabland, J.
delivered the opinion of the court.
[441] The curator of the vacant succession of Arthur Duncan, presented his petition to the court of probates stating he had administered all the effects, with a statement of the amount of the estate, from which, he says, “it will appear there are not assets sufficient to pay the ordinary claims against the succession,” wherefore he prays “ to be allowed to pay the debts in conformity with the order of distribution annexed,” which he asks may be approved and homologated. To this petition is annexed a statement of debts, which he says have a privilege on the price of all the property, which was exclusively movable, with the exception of a lease on a saw-mill; there is also a list of ordinary debts. The usual'notice was given and several opposing creditors appeared, all having claims of the same character. Then oppositions are all in nearly the same terms and allege:
1. They are not placed on the tableau as creditors.
2. That the account or statement of the curator is false and untrue, particularly in the claim for rent of a saw-mill.
3. That the curator has collected divers sums of money, and particularly the sum of $200 from Theodore Meeks, of which he has rendered no account.
4. That the property composing the succession has not been sold.
The opponents all pray that they may be put on the list of creditors with a privilege, that the claim for rent of the saw-mill be rejected, or if allowed, that their claims be preferred to it, that Bach be compelled to account for all the money he has received and do every thing else necessary to a just and speedy settlement of the succession.
Each of the opponents produced in support of his claim a judgment in the probate court against the curator. That of D. Mclnnis is “ for services rendered .at the saw-mill as a sawyer.” L. O. Barbour’s claim is “for services rendered at the saw-mill as a fireman.” McOready’s claim is for “ work done [442] at the saw-mill.” Haines’s is for “work in the saw-mill,” and Duns-more’s is for “ services rendered at the saw-mill.” In each judgment, a “ privilege according to law” is allowed.
In support of the claim for rent a notarial act is filed, dated July 15th, 1836, by which Bach, W. L. Hodge and M. Gordon, Jr., lease to Duncan for three years, the saw-mill, lot, &c. in the Eaubourg Delassize, at an annual rent of $2500, payable semi-annually; the sum of $500 to be deducted from the first payment for improvements and repairs. Bach, for himself and co-lessors, claims an instalment on the rent, less the sum of $500, and puts down the claim on his list of debts as one for $750 with a privilege, after the funeral expenses and law charges. Duncan died on the 2d of December, 1836, the curator was appointed on the 2d of January, 1837, and the seals were removed and inventory made on the 6th of February following.
*269 Upon this evidence the parties went to trial in the inferior court, and the judge allowed the amount of the claim for rent, he ordered the opponents tc be placed on the list of creditors for the amount of their respective claims, and ordered the curator to add to the mass of the succession certain sums by him collected and not accounted for, but to what amount neither the record or judgment informs as. In settling the order of privileges, the court preferred the claims of the opponents, under the name of “ wages of the hands,” to the claim for rent. From this judgment the curator appealed.
Many of the questions which the opponents seemed desirous of raising, ■ were not noticed in the court below and have not been alluded to here. The opponents presented prematurely several points that cannot be examined until the curator presents his final account, the amount of the funds received by him, and his management of the affairs of the succession will then be investigated and he made responsible for the manner of his adminis- [443] tration. The object of the present proceeding is to ascertain the names of ihe creditors, the amount of their debts, to settle their rank and privileges, and obtain the order of the court to pay the debts that shall be admitted as due or owing, all other questions are reserved, until the final account shall be presented.
The probate court is correct in its allowance and classification of the funeral and law charges; we think the claims of the opponents are fully sustained by the evidence, as is also the claim for rent, and the parties are properly placed on the list as creditors, but we think the judge erred in allowing the opponents a privilege of a higher order than that of the lessors of the saw-mill, and further in allowing them any privilege at all. The counsel for the opponents has not in the argument referred us to any law which gives his clients a privilege on the mass of the estate or any particular portion of it, and we have looked in vain for any such provision in our Oode, which at article 3152 says, privileges are only to be allowed when expressly granted. There are no privileges by implication or construction, and we cannot find any granted to laborers employed in a saw-mill at daily or monthly wages. In favor of lessors, privileges of the highest order are expressly given. The article 2675 of the Oode says, “lessors have for the payment of rent, a right of pledge on the movable effects of the lessee found on the property leased. ” Article 3185 says the rights of the lessor are of a higher nature than a mere privilege. He may take the thing itself and keep it until he is paid, whilst other creditors can only enforce their claims upon the price. The article 3225 ranks the privilege of the lessor before the expenses of the last illness, and does not leave a doubt in this case as to the priority of the claim for rent over those of the opponents.
Bach, the curator of the estate, with his petition presented an account or list of debts owing to himself, amounting to $2082 54, with a view of [444] having them recognized as debts against the succession; their jtistice was directly put at issue by the opponents, he has offered on evidence to establish them, the court seems to have disregarded them, and we think properly. It does not appear there are any other creditors; it is therefore easy to classify those before us and direct payment to them.
*270 The judgment of the probate court is therefore annulled and reversed so far as it grants a privilege to any of the opponents; the tableau is to be so amended, and the curator will pay :
1st. The funeral expenses.
2d. The law charges, including all the expenses of settling the succession.
8d. The claim for rent, amounting to seven hundred and fifty dollars.
The balance of the funds which shall be found belonging to the succession, to be paid to the opponents as chirographic creditors, to be taken pro rata, if there shall not be a sufficient amount remaining to pay them all. It is further ordered, the costs of this appeal shall be paid by the opponents, those in the court of probates by the 'curator out of the funds belonging to the succession.